## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PRIME CORE TECHNOLOGIES INC.,<br>*et al.,*[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>Jointly Administered |
| PCT LITIGATION TRUST,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>GTH-TRADE GROUP KFT and<br>MELP CORPORATION s.a.,<br><br>　　　　Defendants. | Adv. Pro. No. 24-50236 (JKS)<br><br>**Related Adv. D.I. 1 and 20**[2] |

## OPINION

Before the Court is the defendants' GTH-Trade Group Kft ("GTH") and Melp

Corporation s.a. ("Melp," and GTH, the "Defendants") Motion to Dismiss[3] the Complaint filed

by PCT Litigation Trust ("PCT" or the "Trust"), pursuant to Federal Rule of Civil Procedure

---

[1] The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528).

[2] Citations to D.I. __ reference the docket entries in the lead bankruptcy case, *Prime Core Technologies Inc.,* Case No. 23-11161. Citations to Adv. D.I. __ reference the docket entries in this adversary proceeding, *PCT Litigation Trust v. GTH-Trade Group Kft and Melp Corporation s.a.,* Adv. Pro. No. 24-50236.

[3] Adv. D.I. 20 (Motion to Dismiss Adversary Proceeding Complaint Pursuant to Fed. R. Civ. P. 12(b)(7)). *See also* Adv. D.I. 22 (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19) and Adv. D.I. 23 (Notice of Completion of Briefing on Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(7)).

12(b)(7), for failure to join parties under Federal Rule of Civil Procedure 19 (the "Motion to Dismiss").  For the reasons set forth below, the Court will deny the Motion.

## JURISDICTION

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(B)(2) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

### A.  General Background

On August 14, 2023 (the "Petition Date"), each of the debtors (collectively, "Prime" or the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

The Plaintiff PCT Litigation Trust was created, pursuant to the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors (the "Plan"),[4] which the Court confirmed on December 21, 2023 in its Findings of Fact, Conclusions of Law, and Order (i) Approving the Disclosure Statement on a Final Basis and (ii) Confirming the Amended Chapter 11 Plan of Reorganization of Prime Core Technologies Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code.[5]  The Plan was consummated on January 5, 2024 (the "Effective Date").  On the Effective Date, the Trust was established, and

---

[4]  D.I. 592 (Plan).

[5]  D.I. 644.

the Debtors' Vested Causes of Action (as defined in the Plan) were transferred and assigned to the Trust.[6]  The Trust is being administered by the PCT Litigation Trustee, David Dunn.[7]

On November 21, 2024, PCT commenced this adversary action by filing the Complaint. The Complaint seeks, among other things, to avoid and recover a series of transfers totaling not less than $9,182,533.49 as preferential transfers under sections 547 and 550 of the Bankruptcy Code (the "Transfers").

### B.  Factual Background

GTH is a private trading company specializing in the trade of precious metals for investment purposes, offering clients financial services, including the exchange of cryptocurrencies for fiat via wire transfers.  GTH conducted these services using Prime as the on-off ramp provider to process fiat or cryptocurrency funds and hold them until instructed to transfer or convert the funds.  GTH asserts it acted effectively as a brokerage account for its clients (the "Clients") who were making the buy/sell orders for cryptocurrency or fiat and vice versa.

In 2013, GTH began operating its cryptocurrency exchange services through a new name, Melp, and engaged with the Debtors through this new entity in the same manner.[8]

The Defendants usually transferred funds to and out of the Debtors within 24 hours.

The Debtors deny any contractual relationships with the Defendants' Clients.

---

[6] See D.I. 592 (Plan) at § 6.21.

[7] See D.I. 592 (Plan) at § 1.118.

[8] GTH and Melp are referenced interchangeably in the Motion to Dismiss.  The Court will refer to the Defendants collectively, even though in some instances the Motion to Dismiss only refers to one of the Defendants.

### C.  The Transfers

In 2022, GTH executed the GTH Order Form so that Prime could provide GTH with payment rails and on-and-off ramp services necessary to assist GTH with its business.  In 2023, Melp executed the Melp Order Form to succeed GTH's relationship with Prime.  The only parties to these agreements[9] (collectively, the "Agreements") are Prime and the Defendants.

Pursuant to the Agreements, and during the Preference Period, the Defendants transferred $730,550.65 to the Debtors; and the Debtors made outgoing transfers totaling $9,913,104.14 to or on behalf of the Defendants.  PCT seeks to avoid the Transfers from Prime to or for the benefit of the Defendants of not less than $9,182,553.49 during the Preference Period.[10]

PCT asserts that the Defendants directed Prime to make each of the Transfers and that each Transfer was initiated by Jerry Lopez Rodriquez, the Defendants' founder and CEO, who directed the outgoing wires based on the Debtors' Application Program Interface, which identifies the customer's email that initiated each transfer and logs transfer requests information.[11]

The Defendants argue that their Clients, who are not identified, are necessary parties to the adversary proceeding and seek to dismiss the Complaint on the basis that PCT failed to join the Clients.

---

[9]  Adv. D.I. 1 (Complaint) at Ex. A (Prime Trust Order Form with GTH), Ex. B. (Prime Trust Master Services Agreement), Ex. C (Service Schedule for Prime Trust Custodial Services), Ex. D (Prime Trust Order Form with Melp); Ex. E (Prime Trust Master Services Agreement); and Ex. F (Service Schedule for Prime Trust Custodial Services).

[10]  The Transfers include a portion of the following transactions: 12 incoming wires from the Defendants to the Debtors totaling $730,550.65; and 138 outgoing wires from the Debtors to the Defendants totaling $9,913,104.14. *See* Adv. D.I. 1 (Complaint) at ¶1.

[11]  Adv. D.I. 1 (Complaint), Ex. G (Declaration of James P. Brennan) at ¶ 60 and n. 20.

## ANALYSIS

### A.  Legal Standard

Pursuant to Rule 12(b)(7), a party may move to dismiss a complaint for failure to join a party under Rule 19.[12]  Rule 19, which governs joinder of parties, compels a bifurcated analysis.[13]  First, the court must determine whether a party is "necessary" to the dispute and, second, the court must evaluate whether a necessary party who cannot be joined is indispensable.[14]

Under Rule 19(a), "a party is necessary if either (1) the present parties will be denied complete relief in the absence of the party to be joined, or (2) the absent party will suffer some loss or be put at risk of suffering such a loss if not joined.  As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible.[15]

---

[12]  Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19, as made applicable to this contested matter by Fed. R. Bankr. P. 7012(b)(7) and Fed. R. Bankr. P. 7019.  In reviewing a Rule 12(b)(7) motion to dismiss, the court accepts as true the factual allegations of the complaint.  *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 686 (D. Del. 2010). "A court making a Rule 19 determination may consider evidence outside the pleadings." *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009) (citation omitted).

[13]  *See generally Koppers Co., Inc. v. The Aetna Cas. and Sur. Co.*, 158 F.3d 170, 175 (3d Cir.1998).

[14]  Fed. R. Civ. P. 19; *Koppers Co.*, 158 F.3d at 175 (citations and footnote omitted) ("Subsection (a) of Rule 19 addresses the issue of whether a party should be joined as a 'necessary' party.  Subsection (b) concerns the issue of whether a party is an 'indispensable' party.  In reviewing a district court's determination pursuant to Rule 19, we must first determine whether a party is a necessary party to the dispute.  If the party is determined to be a necessary party but cannot be joined because such joinder would defeat diversity, it must then be determined whether the absent party is an indispensable party.").

[15]  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007) ("Under Rule 19(a), the joinder of parties is compulsory or 'necessary' if their joinder is 'feasible.'"); *CGL, LLC v. Schwab*, No. CIV.A. 11-04593, 2011 WL 4528300, at *1 (E.D. Pa. Sept. 30, 2011) (stating if an absent party is necessary and joinder is possible, the court must allow the plaintiff an opportunity to add the missing necessary party); *Sig Swiss Indus. Co. v. FRES-CO Sys. U.S.A., Inc.*, No. CIV. A. 91-0699, 1991 WL 64593, at *1 (E.D. Pa. Apr. 23, 1991) (same); *Koppers Co.*, 158 F.3d at 175 (same).

If the joinder of a necessary person under Rule 19(a) is impossible, the action may be dismissed if the court cannot, in equity and good conscience, proceed without that person.[16] Factors the court must consider in determining whether the person is indispensable include: the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; the extent to which the prejudice can be lessened through protective measures in the judgment; the adequacy of a judgment rendered in the person's absence; and the adequacy of the plaintiff's remedy if the action is dismissed for nonjoinder.[17]

The movant bears the burden of establishing that dismissal is appropriate based on the failure to join an indispensable party.[18]

### B.  Summary of Parties' Arguments

The Defendants argue that all persons involved in the Transfers, upon which the Defendants acted on behalf of, should be joined and that PCT's failure to join them warrants dismissal of the Complaint.  More specifically, the Defendants assert that they never had dominion and control over their Clients' funds, all Transfers were made at their Clients' discretion, and the Defendants were not a transferee of a transfer from any of their Clients.

PCT argues that the Defendants' Clients are not required parties and that the Court can accord complete relief between the existing parties without naming the Defendants' Clients.  It argues that there is no risk of the Defendants incurring double, multiple, or inconsistent obligations.  PCT also contends that the contractual agreements between Prime and the

---

[16]  Fed. R. Civ. P. 19(b).

[17]  Fed. R. Civ. P. 19(b).

[18]  *Disabled in Action of Pa. v. SEPTA*, 635 F.3d 87, 97 (3d Cir. 2011).

Defendants do not reflect a debtor/creditor relationship and denies any contractual relationship between Prime and the Defendants' Clients. As a result, PCT seeks denial of the Motion to Dismiss.

### C. Rule 19(a)(1)(A): The Clients are Not Required Parties Necessary to Accord Complete Relief

Rule 19(a)(1)(A) defines a required party as a person in whose absence "the court cannot accord complete relief among existing parties."[19] Rule 19(a)(1), however, similarly "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court."[20] "A party is necessary if, in the absence of the party, (1) complete relief cannot be afforded to the present parties, (2) the disposition of the action would impair the party's ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations."[21]

The Defendants argue that failure to join their Clients as parties would prevent PCT from obtaining complete relief because the Clients received the Transfers or benefitted from them. The Defendants contend that they never had dominion and control over the funds at issue in the

---

[19] Fed. R. Civ. P. 19(a)(1)(A).

[20] *Gen. Refractories Co.*, 500 F.3d at 315 (citations omitted). The Third Circuit has recognized that where liability is joint and several among multiple parties, a court may grant complete relief with respect to any one of the parties; as a result, the other parties are not necessary under Rule 19(a)(1)(A). *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993).

[21] *Smith v. Lynn*, No. CV 18-1415-CFC-SRF, 2019 WL 2410856, at *6 (D. Del. June 7, 2019), report and recommendation adopted, No. CV 18-1415-CFC/SRF, 2019 WL 4603800 (D. Del. Sept. 23, 2019), *aff'd*, 809 F. App'x 115 (3d Cir. 2020). *See also Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996) (citations omitted) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought."); *Janney Montgomery Scott*, 11 F.3d at 405 (citation omitted) ("Under Rule 19(a), we ask first whether complete relief can be accorded to the parties to the action in the absence of the unjoined party.").

Transfers and acted solely as direct and indirect agents on behalf of the Clients to transfer cryptocurrency.  They cite to the facilitation agreement[22] between Defendant GTH and the Clients that identifies GTH as the "Facilitator."  The Defendants represent that the facilitation agreement states:

> The Facilitator shall, on behalf of the Client, assist in identifying and coordinating cryptocurrency-to-fiat conversion transactions by facilitating transfers, sourcing liquidity providers or counterparties, and supporting transaction logistics.  The Facilitator does not act as a licensed cryptocurrency exchange nor provides custodial or regulated financial services.
> ***
> The facilitator agrees to receive cryptocurrency from the Client for the purpose of coordinating its sale or exchange to fiat currency through third-party service providers or over-the-counter (OTC) channels.[23]

The Defendants contend that the facilitation agreement "clearly communicates the limited command that the Defendants have over the funds of the client."[24]  They maintain that all Transfers between GTH and Prime were on behalf of Defendants' Clients who had ultimate control over their money.

In *General Refractories Co. v. First State Insurance Co.*, the Third Circuit held that an insurance company defendant was not a "necessary" party under Rule 19(a)(1)(A) because the Court could grant complete relief to the plaintiff from any insurer it named in the action.[25]  The defendant-insurance company would maintain its rights for contribution, but as far as the plaintiff was concerned, the plaintiff could receive complete relief against the joint-and-several

---

[22] The Defendants did not attach the facilitation agreement to the Motion to Dismiss.

[23] Adv. D.I. 20 (Motion to Dismiss) at ¶ 21.

[24] Adv. D.I. 20 (Motion to Dismiss) at ¶ 21.

[25] *Gen. Refractories Co.*, 500 F.3d at 314.

named-defendant.[26]  Similarly, in this case, the Court may grant complete relief against the

Defendants and the Defendants will retain whatever rights they may have against their Clients.

The Defendants rely on *In re Herman Cantor Corp.*[27] to support their position that the

Clients must be joined as necessary parties.  Therein, the plaintiff paid off its bank loan and the

bank released a certificate of deposit that it held as collateral for the loan.[28]  The plaintiff then

filed for bankruptcy and sued the bank for preference and the bank moved to add the third-party

defendant who held the certificate of deposit as collateral.  The court held that the third-party

defendant was to be joined because the third-party defendant could be liable to the plaintiff and if

the plaintiff was unable to recover its claim against the bank, the plaintiff's recovery would be

incomplete.[29]  *In re Herman Cantor Corp.* is factually distinguishable.  Here, there is no such

relationship alleged between the Debtors and the Defendants' Clients.  The unidentified Clients

are purportedly unknown to the Debtors and the Defendants have not alleged any contract or

privity between the Debtors and the Defendants' Clients.  Complete relief can be afforded

without joining the Clients.

The Defendants also rely on *In re Black Elk Energy Offshore Operations, LLC,*[30] for the

proposition that the person in control of the funds should be joined.  In *Black Elk*, the defendant

---

[26] *Gen. Refractories Co.*, 500 F.3d at 313.  *But see Amboy Bancorporation v. Bank Advisory Group*, 432 Fed. Appx. 102, 112 (3d Cir. 2011) (holding that New Jersey state law imposes joint and several liability only on tortfeasors who are 60% or more responsible for the total damages; thus, trial court could not grant complete relief without the defendant).

[27] *Herman Cantor Corp. v. Central Fidelity Bank, N.A. (In re Herman Cantor Corp.)*, 17 B.R. 612 (Bankr. E.D. Va. 1982).

[28] *In re Herman Cantor Corp.*, 17 B.R. at 613.

[29] *Id.*

[30] *Schmidt v. The Grand Ltd. (In re Black Elk Energy Offshore Operations, LLC)*, 605 B.R. 138 (Bankr. S.D. Tex. 2019).

sought to join the debtor's affiliate as a necessary party in an adversary proceeding arguing only the affiliate could assert affirmative defenses against a portion of the alleged transfers. The court found that joinder of the affiliate was not required because the complaint focused on plaintiff and defendant and the defendant did not allege the affiliate controlled any portion of the money the trustee sought to recover. Because the court found the affiliate had no interest in the litigation, the Court determined that the litigation presented no threat of collateral estoppel or res judicata. The court held it could provide complete relief to the parties without joinder. The Defendants argue *Black Elk* is similar and that the Clients are necessary parties because the Clients *had control* over the money. The Complaint, however, alleges the Defendants were in control of the money or the Transfers, not the Clients. In fact, PCT's opposition alleges that every Transfer was initiated by the Defendants' CEO as reflected in the Application Program Interface data.[31] The Complaint focuses on the Plaintiff and Defendants and the Clients are not necessary parties for the Plaintiff to receive complete relief. The Defendants' reliance on *Black Elk* is misplaced.[32]

As discussed, the Complaint seeks to avoid the Transfers from Prime to the Defendants.[33] PCT asserts the Defendants were the initial transferee of the Transfers (the Court is not ruling on those Transfers herein) and the Defendants' Clients only become involved after the initial Transfer[34] and, therefore, are not necessary parties to the litigation.[35] Transfers between the

---

[31] Adv. D.I. 1 (Complaint), Ex. G (Declaration of James P. Brennan) at ¶ 60 and n. 20.

[32] *In re Black Elk Energy Offshore Operations, LLC*, 605 B.R. at 144.

[33] Adv. D.I. 1 (Complaint) at ¶ 205.

[34] *See In re Michigan BioDiesel, LLC*, 510 B.R. 792, 799 (Bankr. W.D. Mich. 2014).

[35] *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980) (holding that "potential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible."); *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, No. 94 C 3303, 1996 WL 435180, at *6 (N.D. Ill. July 31, 1996) (cleaned up) ("The 'complete relief' provision of Rule 19 relates to those persons already parties and does not

Defendants and their Clients, if any, did not arise from the contractual Agreement between Prime

and the Defendants.[36]  The Clients do not possess interests in the pending litigation that is

"legally protected."[37]  "Any effect that a decision of the court may have on the absent parties is

immaterial.  Even the possibility that an already named party might have to defend its rights in a

subsequent suit by the party who is claimed to be 'necessary' does not make that party

necessary."[38]  The Defendants retain whatever rights they may have against their Clients.

Consequently, the Defendants have not shown[39] that their Clients are necessary to provide full

relief to the Plaintiff.  Additionally, this adversary proceeding is a preference-avoidance action,[40]

and only the Debtors, and now the Trustee, may assert avoidance actions.[41]  A preference action

cannot be asserted by the Defendants against their Clients.

---

concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible."); *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984) (citations omitted) ("Rule 19 does not speak of inconsistent 'results.' Rather, it speaks in terms of inconsistent 'obligations.' As pointed out, defendant's scenario does not result in subjecting the defendant to inconsistent obligations, but instead imposes the consequences of inconsistent results.").

[36] *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 972 (9th Cir. 2008) (finding that, under certain circumstances, if a claim does not arise from the terms of the same bargained contract, it is not a legally protected right).

[37] *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008) (citation omitted).

[38] *Chao v. Lexington Healthcare Grp., Inc. (In re Lexington Healthcare Grp., Inc.)*, 316 B.R. 658, 661 (Bankr. D. Del. 2004) (citations omitted).

[39] *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) (citations omitted) (holding that "when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.").

[40] The Complaint includes counts for (i) avoidance of preferential transfer pursuant to 11 U.S.C. § 547(b); (ii) avoidance of constructive fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B); (iii) recovery of avoided transfers from the Defendants pursuant to 11 U.S.C. § 550; and (iv) claims objection pursuant to 11 U.S.C. § 502. *See* Adv. D.I. 1 (Complaint) at ¶¶ 169-196.

[41] *Wansdown Pro. Corp. N.V. v. Azari (In re Wansdown Props. Corp. N.V.)*, 647 B.R. 23, 32–33 (Bankr. S.D.N.Y. 2022) (cleaned up, citations omitted) ("The Code bestows broad powers upon a trustee to avoid certain transfers of property made by a debtor before the filing of a bankruptcy petition.  When the Trustee succeeds, the transferred property is returned to the estate for the benefit of all persons who have presented valid claims.  Specifically, section 544(b) of the Code provides that a trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the

### D. Rule 19(a)(1)(B): The Defendants' Clients are Not Indispensable

Notwithstanding a determination that complete relief may be accorded to those persons already named as parties to an action, a court still may deem a party "necessary" under Rule 19(a)(1)(B).  Under Rule 19(a)(1)(B), a required party may be one who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest; or leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of this interest."[42]  Case law distinguishes between a legally protected interest, which supports joinder under Rule 19, and a financial interest, which does not.[43]

The Defendants allege that they will be exposed to inconsistent, outsized obligations if their Clients are not joined as required parties.  The Defendants assert that they were directed by their Clients and acted solely as a direct agent of their Clients (or as a mere conduit of their Clients).

The Defendants' Clients have not claimed any interest in this adversary proceeding.  Nor would a judgment against the Defendants leave the Defendants with any risk of incurring multiple or inconsistent obligations.[44]  Accordingly, the Defendants' Clients are not indispensable.

---

Code.  Where no trustee is appointed, a debtor in possession is statutorily vested with all the rights and powers (other than rights to compensation and with immaterial exceptions) of a bankruptcy trustee.").

[42]  Fed. R. Civ. P. 19(a)(1)(B).

[43]  *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005).

[44]  *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 745 (Bankr. S.D.N.Y. 2008) (citation omitted) (holding that "where the plaintiff sues one of two tortfeasors, the defendant does not face 'multiple liability' because it may lose in the original action and then lose the subsequent action for contribution against the other joint tortfeasor.").

## CONCLUSION

For the reasons set forth above, the Court concludes that the Defendants' Clients are not necessary nor indispensable and, consequently, they need not be joined for the adversary action to continue.  The Motion to Dismiss will be denied.  An Order will be issued.

Dated: November 7, 2025

_____
J. Kate Stickles
Unites States Bankruptcy Judge